# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
# URBANA DIVISION

|  |  |
|---|---|
| IN RE: BEN MILLER and <br> DEBBIE ANN MILLER, <br><br> Debtors, <br><br> STATE BANK OF ARTHUR, <br><br> Appellant, <br><br> v. <br><br> IN RE: BEN MILLER and <br> DEBBIE ANN MILLER, <br><br> Appellees. | Case No. 12-CV-02052 |

## OPINION

This is an appeal from an Order entered by the United States Bankruptcy Court for the Central District of Illinois (Bankruptcy Case No. 10–92570). This court has jurisdiction over the appeal pursuant to 28 U.S.C. § 158(a). This court has carefully reviewed both parties' arguments. Following this careful review, this court reverses the Order of the Bankruptcy Court.

## FACTS[1]

Mr. and Mrs. Miller opened a personal banking account with the State Bank of Arthur ("Bank") on or about February 25, 1995, in the name of Bennie A. Miller ("Miller") and Debbie

---

[1] **All facts are taken from *Miller v. State Bank of Arthur*, Nos. 10-92570, 11-9055, 2012 WL 32664 (Bankr. C.D. Ill. Jan. 6, 2012).**

A. Miller. The Millers subsequently purchased Power Plus, a lawn equipment business based in Arthur, Illinois. During the period from January 2, 1999 until the time of this lawsuit, the Millers executed and delivered five promissory notes with different principal amounts to the Bank in which they promised to pay the Bank the note amounts plus interest. The Millers also executed and delivered five commercial security agreements and one mortgage as security for the notes; the commercial security agreements gave the Bank a security interest in most of the Millers' business assets. All of the loan documents were signed by Mr. Miller as "Bennie A. Miller." The Bank filed a UCC1 financing statement on January 7, 1999, and the statement identified the debtors as "Bennie A. Miller" and "Debbie A. Miller." Mr. Miller signed the financing statement as "Bennie A. Miller." Timely continuations of the original financing statement were filed on September 5, 2003, and July 21, 2008.

At trial, Mr. Miller testified that he has gone by the name "Bennie Miller" for much of his adult life, and that he is generally known by this name in the community. "Bennie A. Miller" is also the name listed on his unexpired driver's license, his Social Security card, the deed to the Millers' home, his federal income tax returns, the signature card he signed when the Millers opened their original account with the bank in 1995, all of the loan documents with the Bank, a Capital One credit card account, and the bill of sale from the purchase of the Power Plus business. In contrast, "Ben Miller" is the name listed on Mr. Miller's birth certificate, on a letter from another creditor, on two proofs of claim filed by Mr. Miller's accountant and his doctor, and on his American Express account.

On December 22, 2010, the Millers filed for Chapter 13 bankruptcy and listed the Bank as a secured creditor. On June 17, 2011, the Millers filed an adversary proceeding against the

Bank to avoid the Bank's security interest. The Millers argued that the Bank incorrectly identified Mr. Miller on its financing statement, as governed by Article 9 of the Uniform Commercial Code (UCC), as adopted by the Illinois Legislature, 810 ILCS 5/9-521, by listing the name, "Bennie A. Miller," and thereby failed to perfect its security interest.

Following an evidentiary hearing on October 24, 2011 at which both parties were asked to submit written closing arguments, the Bankruptcy Court filed a written Opinion and Order in which it ruled in favor of the Millers. The Millers were thus allowed to avoid the Bank's lien on Mr. Miller's one-half interest in the business assets. The Bank then timely filed this appeal.

## STANDARD OF REVIEW

A federal district court reviews a bankruptcy court's conclusions of law *de novo* and its findings of fact only for clear error. *Freeland v. Enodis Corp.,* 540 F.3d 721, 729 (7th Cir. 2008). A finding of fact is clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Aiello v. Providian Fin. Corp.*, 257 B.R. 245, 248 (N.D. Ill. 2000). Mixed questions of law and fact are reviewed *de novo*. *In re Winer*, 158 B.R. 736, 740 (N.D. Ill. 1993). Finally, questions of statutory construction are considered questions of law and are also reviewed *de novo. LaSalle Nat'l Bank Ass'n v. Cypress Creek 1*, 242 Ill. 2d 231, 237 (Ill. 2011). Although the Millers argue that this case presents solely an issue of fact—that is, whether the financing statement was factually "seriously misleading," this court disagrees. As the present issue may best be characterized as an interpretation of 810 ILCS 5/9-101 *et seq.*, which tracked

the language of Article 9 of the UCC, the case presents at best a mixed question of law and fact. Accordingly, this court will review these proceedings *de novo*.

On issues of state law, in the absence of binding Illinois authority, a federal court must predict how the Illinois Supreme Court would rule and decide it the same way. *MindGames, Inc. v. W. Pub. Co., Inc.*, 218 F.3d 652, 655-56 (7th Cir. 2000); *In re My Type, Inc.*, 407 B.R. 329, 334 (Bankr. C.D. Ill. 2009) (bankruptcy). In bankruptcy cases, the federal court may refer to "all relevant data including state appellate decisions, state supreme court dicta, restatements of law, law review commentaries, and the majority rule among other states." *In re Giaimo*, 440 B.R. 761, 769 (B.A.P. 6th Cir. 2010).

## ANALYSIS

The Bankruptcy Court reasoned as follows: (1) as the law currently exists in Illinois, a UCC1 financing statement must set forth the legal name of a borrower; (2) a debtor's legal name is the one indicated on his birth certificate, rather than the name on his driver's license or Social Security card; (3) Miller's name on his Indiana birth certificate is "Ben Miller"; (4) Miller has not changed his legal name to "Bennie Miller"; and (5) a search using the filing office's standard search logic for the legal name "Ben Miller" did not disclose a financing statement for him. Therefore, the Bankruptcy Court concluded that the Bank's use of the name "Bennie A. Miller" on its financing statement was "seriously misleading." Accordingly, that court held that the financing statement was insufficient to perfect the Bank's security interest in the collateral, and thus, the Bank was not entitled to receive Bennie Miller's 50% of the collateral, but rather, only Debbie Miller's 50% share.

However, neither Illinois law nor the UCC requires that a "legal name" be used on the financing statement in order to perfect a security interest. Instead, the UCC requires only a "correct name". Because the Bankruptcy Court created an additional requirement of law where none exists by mandating that lenders use the debtor's "legal name" on the financing statement and held that the name on a debtor's birth certificate takes priority over the name on his other commonly-accepted documents in defining the debtor's "legal name", this court must reverse.

**I. No requirement of a "legal" name in Illinois**

The financing statements were initially filed in 1999, with continuations filed in 2003 and 2008. The relevant Illinois statutes were amended to reflect certain UCC adoptions in 2001. Therefore, certain parts of this analysis will examine the pre-adoption statutes while others the modern version. Regardless, it is clear that the outcome is unaffected by the change in statutory language.

A financing statement must be filed to perfect the relevant security interest. 810 ILCS 5/9-302 (1999); 810 ILCS 5/9-310 (2012). In 1999, 810 ILCS 5/9-402 (1999) governed the formal requisites of a financing statement. That section allowed that "[a] financing statement is sufficient if it gives the names of the debtor and the secured party . . . ." In 2001, the Illinois legislature replaced the substance of Section 5/9-402 with Section 5/9-521. An Act in Relation to Secured Transactions, Public Act No. 98-893, effective July 1, 2001. After this amendment, 810

ILCS 5/9-501 (2001) *et seq.* governed the form and substance of a financing statement.[2] 810 ILCS 5/9-502(a) (2001) provides, in pertinent part:

> (a) Sufficiency of financing statement. [A] financing statement is sufficient only if it (1) provides the name of the debtor; (2) provides the name of the secured party or a representative of the secured party; and (3) indicates the collateral covered by the financing statement.

Additionally, 810 ILCS 5/9-503(a) (2001) provides, in pertinent part:

> (a) Sufficiency of debtor's name. A financing statement sufficiently provides the name of the debtor: . . . (4) in other cases: (A) if the debtor has a name, only if it provides the individual or organizational name of the debtor[.]

In exception to the above, 810 ILCS 5/9-402(8) (1999) provides, in pertinent part:

> (8) A financing statement substantially complying with the requirements of this Section is effective even though it contains minor errors which are not seriously misleading.

Similarly, 810 ILCS 5/9-506(a) (2001) provides, in pertinent part:

> (a) Minor errors and omissions. A financing statement substantially satisfying the requirements of this part is effective, even if it has minor errors or omissions, unless the errors or omissions make the financing statement seriously misleading.

Section 402(8) (1999) (and by analogy, § 9-506(a) (2001)) has been interpreted to mean that any deviation in the debtor's name, except those that are not seriously misleading, is sufficient to make the financing statement invalid and ineffective. *See, e.g.*, *First Nat. Bank of Lacon v. Strong*, 663 N.E.2d 432, 435 (Ill. App. Ct. 1996).

As a safe harbor, 810 ILCS 5/9-506(c) (2001) provides:

> (c) Financing statement not seriously misleading. If a search of the records of the filing office under the debtor's correct name, using the filing office's standard search logic, if any, would disclose a financing statement that fails sufficiently to provide the name of

---

[2] Because this section has not been amended since 2001, citations will be to the 2001 version of the code. Incidentally, the Illinois legislature sent the 2010 Article 9 amendments to the governor for signing on June 22, 2012. S.B. 3764, 97th Gen. Assemb., Reg. Sess. (Ill. 2012). One of the amendments includes an "only if" clause providing that a UCC financing statement properly designates the name of an individual debtor only if it indicates the name that appears on the debtor's driver's license. Such a provision, had it been effective, would have controlled.

the debtor in accordance with Section 9-503(a), the name provided does not make the financing statement seriously misleading.

Finally, 810 ILCS 5/9-521 (2001) provides, in pertinent part:

(a) Initial financing statement form. A filing office that accepts written records may not refuse to accept a written initial financing statement in the form and format set forth in the final official text of the 1999 revisions to Article 9 of the Uniform Commercial Code promulgated by the American Law Institute and the National Conference of Commissioners on Uniform State Laws, except for a reason set forth in Section 9-516(b).

Critically, while § 9-402 (1999) and § 9-503 (2001) both do not specify how a debtor's name should be determined, it is clear that neither requires that a financing statement contain the debtor's *legal* name, much less provides a legal definition of what would constitute a debtor's legal name. Therefore, as the two statutes are substantially similar in this respect, this opinion shall refer to the amended version where the text of the 1999 revision is not specifically relevant.

The one relevant source in which this court could find the phrase "legal name" is in the current Illinois UCC Financing Statement, field 1, which states, in pertinent part:

1. DEBTOR'S EXACT FULL LEGAL NAME - Insert only <u>one</u> debtor name (1a or 1b) - do not abbreviate or combine names

This text exists on the form that Miller completed for one of the other creditors in 2010 as appears in the record on appeal, as well as on the *current* UCC financing statement form and instructions available from the Illinois Secretary of State. *See* http://www.cyberdriveillinois.com/publications/pdf_publications/ucc1.pdf. Although this court was not provided with the actual UCC form as completed by the instant litigants in the record on appeal, when the Bank filed an initial blanket UCC financing statement on January 7, 1999, then-in-force 810 ILCS 5/9-402 (eff. Aug. 27, 1986) controlled the formal requisites of a financing statement. Section 5/9-402 neither referenced the UCC nor referred to a secretary of

state form. Instead, a financing statement was sufficient if it gave the "Names of debtor (or assignor)" and the "Name of secured party (or assignee)". 810 ILCS 5/9/402 (1999). The phrase "legal name" cannot be found in the 1999 version of Section 5/9-402.

Like Section 5/9-402 (1999), 810 ILCS 5/9-521 (2001) also does not directly require an "exact full legal name"; however, it does incorporate the UCC by reference:

> A filing office that accepts written records may not refuse to accept a written initial financing statement in the form and format set forth in the final official text of the 1999 revisions to Article 9 of the Uniform Commercial Code promulgated by the American Law Institute and the National Conference of Commissioners on Uniform State Laws.

The official text of the UCC Financing Statement in § 9-521(a) of the 1999 revision of the UCC includes the title "1. DEBTOR'S EXACT FULL LEGAL NAME". This form has not been modified since. Regardless, the text of the UCC Financing Statement form is not binding authority; rather, the only sources of law are 810 ILCS 5/9-503(a)(4)(A), which requires the debtor's name, and 5/9-506(c), which makes a financial statement not seriously misleading if a search of the records under the debtor's correct name would disclose the relevant financing statement.

The Bankruptcy Court held that "as the law currently exists in the State of Illinois, a UCC1 financing statement must set forth the legal name of a borrower." *In re Miller*, No. 10-92570, 2012 WL 32665 at *4 (Bankr. C.D. Ill. Jan. 6, 2012). In support, the court cited to *In re Kinderknecht*, 308 B.R. 71 (10th Cir. BAP 2004); *In re Borden*, 353 B.R. 886 (Bankr. D. Neb. 2006); *Pankratz Implement Co. v. Citizens Nat'l. Bank*, 130 P.3d 57 (Kan. 2006); and *In re Larsen*, Nos. 09-00219, 09-30054, 2010 WL 909138 (Bankr. S.D. Iowa, Mar. 10, 2010). *Miller*, 2012 WL 32664, at *2-3. On appeal, the Bank argues that, rather than establishing a new

standard, these cases use the term "legal name" as a form of shorthand to mean a name that is not insufficient by law due to excessive informality or misspelling. *See generally*, Harry C. Sigman, *Individual Debtor Names Revisited Yet Again*, 44 UCC L.J. Art. 3 at II.D (July 2012). This court agrees with the Bank.

First, none of the cases cited by the Bankruptcy Court are binding on an Illinois court. Although they each refer to their respective enactments of the UCC, those opinions plainly interpret Kansas, Nebraska, and Iowa law, and accordingly, would be of low persuasive nature to the Illinois Supreme Court. Second, read closely, those cases do not create out of whole cloth a novel definition for an individual's "legal name" and require that this "legal name" be used in financing statements in order to perfect the security interest. Instead, the reasoning of each decision relies on the theory that if a potential debtor's proffered name on the financing statement cannot be associated with the individual's other financing statements following a search using the standard search logic (or in some situations, a diligent or prudent search), then that the name is "seriously misleading" and therefore not entitled to the protection of § 9-506(c).

In *Kinderknect* and *Borden*, the debtor used a nickname on the financing statement as compared with another name used on his official legal documents, including their driver's license and Social Security card. In *In re Kinderknecht*, the creditor filed financing statements listing the debtor as "Terry J. Kinderknecht" even though his "legal name" was "Terrance Joseph Kinderknecht". *Kinderknect*, 308 B.R. at 72. The Bankruptcy Appellate Panel held that "[f]or a financing statement to be sufficient . . . the secured creditor must list an individual debtor by his or her legal name, not a nickname." *Id*. at 73. Notably, however, the appellate panel neglected to indicate how the parties established the debtor's "legal name". The bankruptcy court below

found that "the name on the debtor's birth certificate, driver's license, and Social Security card and in the caption of his bankruptcy petition [was] 'Terrance J. Kinderknecht.'" *In re Kinderknecht*, 300 B.R. 47, 49 (Bankr. D. Kan. 2003) *rev'd*, 308 B.R. 71 (B.A.P. 10th Cir. 2004). The bankruptcy appellate panel ruled that because the financing statements listed the debtor by his nickname, "Terry", which did not match the name on his birth certificate, driver's license, and Social Security card, which was "Terrance", and because a search of the UCC filings under the debtor's correct name, "Terrance", using the office's standard search logic, did not match any financing statements under the name "Terrance", that the financing statements were seriously misleading. *Kinderknect*, 308 B.R. at 76-77. Both the bankruptcy court and the bankruptcy appellate panel were convinced that, at least in the case of confluence between the birth certificate, driver's license, and Social Security card, that the correct name (here, the "legal name") was the one shown in those documents. *See also In re Borden*, 353 B.R. 886, 887 (Bankr. D. Neb. 2006) *aff'd, appeal dismissed*, 2007 WL 2407032 (D. Neb. Aug. 20, 2007) (noting that the debtor's "legal name" of "Michael Ray Borden" or "Michael R. Borden" was the name listed on birth certificate, driver's license, real estate deeds, bank accounts, tax returns, and bankruptcy petition, in contrast to the name "Mike Borden", which was used on the financing statement); *In re Larsen*, 2010 WL 909138 (Bankr. S.D. Iowa Mar. 10, 2010) (unpublished) (noting that when the financing statement used the name "Mike Larsen", a UCC search entering the Debtor's legal name of "Michael D. Larsen" did not yield the result of the UCC of the Bank.)

In *Pankratz Implement*, the issue was fundamentally similar, although cast as a typographical error. There, the debtor "signed a note and security agreement in favor of [the creditor] using his correct name, Rodger House." *Pankratz Implement Co. v. Citizens Nat. Bank*,

130 P.3d 57, 59 (Kan. 2006). The creditor, however, listed the debtor's name as "Roger House" on the financing statement. *Id*. Later, a bank attempted to secure the same property but with the correct name. Because a search on the name "Rodger House" did not disclose the security interest filed by the creditor, *id*. at 60, among other reasons, the Kansas Supreme Court held that the financing statement was seriously misleading. *Id*. at 68.

To compare, in *First Nat. Bank of Lacon v. Strong*, a business incorporated under the name "E. Strong Oil Company" took out a loan from a bank, but the bank used the company's trade name, "Strong Oil Co." in the financing statement. *First Nat. Bank of Lacon v. Strong*, 663 N.E.2d 432, 433 (Ill. App. Ct. 1996). That court held that the name was seriously misleading under the rubric of § 5/9-402(8) (1999) because, at the time, the Secretary of State filed its financing statements alphabetically, and a diligent and prudent search using the correct incorporated name of "E. Strong Oil" would not likely have disclosed the bank's financing statement filed under "Strong Oil Co." *Id*. at 435. Applying this same logic, the court in *In re Paramount* found that although the debtor corporation changed its name from Paramount Attractions, Inc. to Paramount International, Inc., the new name was not seriously misleading because a search of the Secretary of State UCC database for the term "Paramount" and "Dundee" (the road name of the address in the financing statement) produced the filing statement of the creditor. *In re Paramount Int'l, Inc.*, 154 B.R. 712, 713, 716 (Bankr. N.D. Ill. 1993).[3]

---

[3] While *Lacon* and *Paramount* applied a different legal standard than that applicable to the instant case, the reasoning is analogous.

Thus, not only does the text of § 9-403 (1999) or § 9-503 (2001) not have the phrase "legal name", but there is no case law supporting that proposition. Had the drafters of the UCC meant to require a "legal name", they would have included this word in the provision and likely have defined it. Accordingly, this court holds that Illinois law does not require that the financing statements provide the debtor's "legal name".

**II. A name on a driver's license and social security card is sufficient for § 9-503**

Because Article 9 does not require the financing statement provide the debtor's "legal name" on the financing statement, but instead only use a name that is not seriously misleading, this court concludes that the use of the name "Bennie A. Miller" on the financing statement was sufficient for the financing statement to be effective. This was the name used on Miller's driver's license, Social Security card, and federal income tax returns, among other official documents.

Even if this court were to find that Article 9 requires a debtor's legal name, which, as discussed above, it does not, the requirement would still be met for three reasons. First, to the extent that Miller relies on cases creating a "legal name" requirement, as discussed above, those cases either do not specifically require that a debtor's "legal name" can only be defined by his or her birth certificate, or in fact allow the debtor's driver's license or Social Security card as one form of evidence of his or her "legal name".

Second, prior to July 1, 2010, an individual in Illinois could change his legal name "without resort to any legal proceedings, and for all purposes the name thus assumed will constitute his legal name just as much as if he had borne it from birth." *Reinken v. Reinken*, 184 N.E 639, 640 (Ill. 1933); *Thomas v. Thomas*, 100 Ill.App.3d 1080 (Ill. App. Ct. 1981) (citing

*Reinken*). The Illinois legislature made common law name changes invalid if assumed on or after July 1, 2010. 735 ILCS 5/21-105. However, Miller assumed the legal name "Bennie A. Miller" prior to this date. "Bennie A. Miller" is the name on his driver's license, his social security card, the deed to the Millers' home, his federal income tax returns, his Capital One credit card, and the bill of sale for the Millers' business. Additionally, Miller testified that he has gone by this name and that the community knows him by this name. Thus, even if this court were to assume that § 9-503 required a debtor's "legal" name, Miller had lawfully assumed the "legal" name "Bennie A. Miller" at the time the note was signed.

Third, non-UCC Illinois law defines the term "legal name." Both the Illinois Vehicle Code and the Illinois Identification Card Act define a "legal name" as the "full given name and surname of an individual as recorded at birth, recorded at marriage, or deemed as the correct legal name for use in reporting income by the Social Security administration or the name as otherwise established through legal action that appears on the associated official document presented to the Secretary of State." 625 ILCS 5/1-137.5; 15 ILCS 335/1A. By analogy, and because the Illinois UCC statutes do not directly define "legal name", if this court were to assume that a "legal" name is required, "Bennie A. Miller" is the name listed on an official document presented to the Secretary of State (his driver's license), making it a cognizable "legal" name under non-UCC Illinois law.

Here, Miller provided a name that he used regularly for many years and that was listed on several official and personal documents. When a search was performed on that name, "Bennie A. Miller", five of the six secured creditors that filed financing statements showed up in the database. Because (1) there is no requirement pursuant to statutory, regulatory, or judge-made

law that a "legal name" be used on a financing form; (2) no requirement that a birth certificate is a more reliable or valid source of an individual's current name than his or her driver's license and Social Security card; and (3) the great majority of the creditors did in fact identify Debtor as "Bennie A. Miller", and, more to the point, would have been able to find any prior filing under that name, it is clearly erroneous to posit that the name "Bennie A. Miller" either fails to provide sufficiently the name of the debtor or is misleading. Furthermore, the policy behind the secured transactions article of the UCC is to ensure certainty for creditors and provide notice of security interests to third parties. 68A Am. Jur. 2d Secured Transactions § 259; *Octagon Gas Sys., Inc. v. Rimmer*, 995 F.2d 948, 957 (10th Cir. 1993); *Pankratz Implement Co. v. Citizens Nat. Bank*, 130 P.3d 57, 67 (Kan. 2006). The Bank was the first creditor to file on January 7, 1999. GE Commercial Distribution Finance filed on February 18, 1999, American Honda Finance filed on December 27, 2000, Textron Financial filed on November 15, 2001, and Red Iron Acceptance filed on February 9, 2010. If any financing statement were to have a name that was seriously misleading, it should have been the filing for Crader Equipment, which filed on January 11, 2010 using the name "Ben Miller" and would hypothetically have been the only creditor that could not be found by the other creditors or by subsequent potential creditors. In fact, were this court to affirm, it would implicitly rule that the other five of the six creditors, which did use the name "Bennie A. Miller", had improperly filed financing statements.

**III. Public policy**

This outcome is supported both by common sense and public policy. The fundamental legal issue here is not whether a legal name is required on a financing statement, or how close

- 14 -

the name on the financing statement must be to the debtor's "correct" or "legal" name, or even what constitutes the debtor's legal name, but rather whether the name on an individual's birth certificate trumps the name on his or her driver's license and Social Security card. The answer to that question ought to be clear.

Appellee cites *In re Berry* in support of the argument that the name on a debtor's birth certificate is the best evidence of a debtor's correct name when legal documents contain conflicting names. *In re Berry*, Nos. 05-14423, 05-5755, 2006 WL 2795507, at *1 (Bankr. D. Kan. 2006) ("In most cases, the name on the debtor's bankruptcy petition, a driver's license, or Social Security card will be the best evidence of the debtor's legal name. If there is a conflict among these documents, the debtor's birth certificate *may* be the best evidence.'") (emphasis added). The decision is not binding; there was no conflict between the two documents in that case, so the notation is dictum; and last, the passage is not exactly the most ringing endorsement.

In contrast, there are three reasons why the driver's license is a better reference for an individual's name. First, a person's driver's license is most likely to reflect his or her current and accurate name. For example, Illinois requires that a person who changes his or her name apply for a corrected driver's license within 30 days after changing the name, but this court could find no such requirement for his or her birth certificate. 625 ILCS 5/6-116(b). It is also rare to see an individual change their surname on their birth certificate in addition to or instead of their driver's license in response to a precipitating legal event such as marriage. A driver's license must also have a (reasonably current) photograph, whereas a birth certificate has none, allowing a creditor an additional method to confirm the debtor's identity. 92 Ill. Admin. Code tit. 92, § 1030.90 (2012). *Cf.* Barkley Clark & Barbara Clark, *Clarks' Secured Transactions Monthly* (Feb. 2012)

(noting that the Bankruptcy Court's preference for the debtor's birth certificate was analogous to a corporate debtor's name as it appears in the articles of incorporation (an entity's "birth certificate"), the Article 9 standard for the names of entity debtors.)

Second, a person's driver's license is typically more readily accessible than a birth certificate. As many people drive a vehicle and as a motor vehicle operator must carry a driver's license in his or her immediate possession, many people carry a driver's license. 625 ILCS 5/6-112. Because carrying a birth certificate is not required to drive a vehicle, it is a far less commonly carried form of identification.

Third, one commentator has noted that "the lending community is strongly in favor of a driver's license solution and they are presumably best-positioned to undertake the cost-benefit analysis." Darrell W. Pierce, *The Revised Article 9 Filing System: Did It Meet Its Objectives?,* 44 No. 1 UCC L.J. Art. 1 (Dec. 2011). If the Illinois implementation of Article 9 required the name on a debtor's birth certificate, a burden would be imposed on creditors retarding lending and commerce, contrary to one of the goals of Article 9.[4]

---

[4] *See generally* Joshua L. Edwards, *Meet the New Test, Same As the Old Test: In Re Spearing Tool's Rejection of the Revised Article 9 Rules Means Secured Creditors Will Get Fooled Again*, 59 Okla. L. Rev. 657, 665 (2006); Steven L. Harris, Charles W. Mooney, Jr., *Revised Article 9 Meets the Bankruptcy Code: Policy and Impact*, 9 Am. Bankr. Inst. L. Rev. 85, 114 (2001). While the initial allocation of rights and burdens may be inconsequential in the absence of transactional costs, it is not inconceivable that prioritizing the name on a birth certificate over other official documents could drastically increase the transactional costs of making and receiving loans, including, for example, the time and monetary cost of updating a birth certificate to match the other legal documents.

It seems absurd that a debtor could provide his driver's license, Social Security card, and federal income tax returns when securing a loan, and then later have the privilege to assert that the creditor was not entitled to the security because the name on the debtor's birth certificate did not match. Placing an additional burden on the creditor to confirm that the name on the birth certificate matched the name on other documents may result in a reduction of the number of loans offered in the market due to the difficulty of perfecting a security interest.

IT IS THEREFORE ORDERED THAT:

(1) The Order of the Bankruptcy Court entered on January 6, 2012, is REVERSED. This case is remanded to the Bankruptcy Court for proceedings consistent with this opinion.

(2) This case is terminated in the district court.

ENTERED this 17th day of August, 2012

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
U.S. DISTRICT JUDGE